UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA,<br>        Petitioner,<br><br>v.<br><br>GEMMA POWER SYSTEMS, LLC,<br>        Defendant. | Civil Action No. 21-0922 (CKK) |

MEMORANDUM OPINION
(July 15, 2022)

Petitioner United Association of Journeyman and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("Petitioner" or "Plumbers") has instituted this action pursuant to section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking to enforce an arbitral award dated February 25, 2021 by the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ("Plan"). The Plan is, among other things, an agreement among a number of North American labor unions involved in the construction trade to settle disputes about work assignments through arbitration conducted by the Plan's appointed arbitrator. ECF No. 11-3 at 3.

Petitioner argues that Gemma agreed to settle work disputes under the Plan, and that, having bound itself, impermissibly assigned work to rival unions during the construction of a power plant in Ohio. Respondent Gemma Power Systems, LLC ("Respondent" or "Gemma"), a construction company, has cross-moved to vacate the arbitral award for lack of jurisdiction, arguing that it has never agreed to be bound to the Plan. As the parties have not identified any

1

contractual instrument binding Gemma to the Plan, and upon consideration of the briefing,[1] the relevant authorities, and the entire record, the Court **GRANTS IN PART AND HOLDS IN ABEYANCE IN PART** Respondent's [11] Motion to Dismiss the Petition and **DENIES** Petitioner's [16] Cross-Motion for Summary Judgment.

### I. BACKGROUND

The parties agree as to all material facts. *See* Resp't's Repl. at 2. The labor dispute here arises from construction work that Gemma hired the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO ("Boilermakers") and the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL-CIO ("Iron Workers") to perform during the construction of a power plant in Guernsey, Ohio. ECF No. 16-3 at 2-3. Initially, Gemma proposed a work agreement to the Plumbers, which the Plumbers rejected. ECF No. 11-1 at 5, ECF No. 11-2 at 3. Rather, Gemma hired the Boilermakers and Iron Workers, executing "Job Compliance Understanding[s]" ("JCU"), on April 15, 2020 and January 23, 2020, respectively. To date, Gemma has never executed any agreement with the Plumbers, although one of Gemma's contractors appears to have subcontracted work to the

---

[1] The Court's consideration has focused on the following documents:
- Petitioner's Petition to Confirm Arbitration Award, ECF No. 1 ("Pet.");
- Respondent's Memorandum in Support of Motion to Dismiss Petition to Confirm Arbitration Award, ECF No. 11-1 ("Resp't's Mot.");
- Petitioner's Memorandum of Points and Authorities in Opposition to respondent's Motion to Dismiss and Memorandum of Points and Authorities in Support of Petitioner's Cross-Motion for Summary Judgment, ECF No. 15 ("Pet'r's Mot.");
- Respondent's Reply Memorandum in Support of its Motion to Dismiss the Petition and in Opposition to Petitioner's Cross-Motion for Summary Judgment, ECF No. 20 ("Resp't's Repl."); and
- Petitioner's Reply Memorandum in Support of Petitioner's Cross-Motion for Summary Judgment ("Pet'r's Repl.").

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

Plumbers at some point during the project. ECF No. 11-1 at 5; ECF 11-2 at 3. Although Gemma never signed a contract agreeing to arbitrate with the Plumbers (or even hire the Plumbers), the Plumbers argue that Gemma nevertheless agreed to arbitrate all subsequent labor disputes with any union as to the Guernsey project under the JCUs executed with the Plumbers' rival unions. In that regard, four provisions in the JCUs are of note.

First, the JCUs "exclude work subcontracted by [Gemma] to others or self-performed by [Gemma] and procured from sources other than [the Boilermakers or the Iron Workers], including but not limited to work within the work jurisdiction of the [Boilermakers or Iron Workers]." ECF No. 11-3 at 10, 20. In other words, the terms of the JCUs apply only to Gemma's relationship with the Iron Workers and Boilermakers and do not apply to Gemma's relationship with any other union.

Second, the JCUs contain an integration clause. That clause provides that the JCUs are "the sole agreement[s] between [Gemma, the Boilermakers, and the Iron Workers], [and] the employer shall not be bound by any other . . . agreements to which [the Boilermakers or the Iron Workers] are [] party." *Id.* at 11, 21. Accordingly, through this integration clause, Gemma has agreed to bind itself only to the terms of the JCUs, and the terms of no other agreement are incorporated into the JCUs unless otherwise stated in the JCUs.

Third, the JCUs include an arbitration clause. The clause provides that "[a]ll disputes over the meaning of, and the rights and obligations contained in th[e] JCUs" shall, if necessary, be resolved by an arbitrator "with the American Arbitration Association." *Id.* at 14-15, 25-56. This association is distinct from arbitration through the Plan.

Fourth and most saliently, the JCUs include an addendum entitled "JURISDICTIONAL DISPUTES." This addendum is the only portion of the JCUs that mention the Plan and its arbitral

provisions.  First,

> [a]ll jurisdictional disputes between or among the [Boilermakers and the Iron Workers] and other unions who have signed agreements with [Gemma] or any subcontractor governing the performance of work [assigned in the JCUs], and who have agreed to be bound to the procedures provided in [the Plan] shall be settled and adjusted according to [the Plan].  The assignments of [Gemma] or a subcontractor (where applicable) shall be followed until the dispute is resolved in accordance with the Plan.  Decisions rendered under the plan shall be binding and conclusive *on [the Boilermakers and Iron Workers] or other affected unions*.

*Id.* at 17, 27 (emphasis added).  The addendum also states that

> "[n]othing herein shall affect the right of [Gemma] to determine the work jurisdiction of [employees or contractors sourced outside the Boilermakers and Ironworkers] who are not represented by a Union, and the Plan shall not be empowered to affect work assignments of such [employees or contractors sourced outside the Boilermakers and Ironworkers]. [Gemma] *retains the sole right to control and assign the jurisdictional duties for all work.*

*Id.* at 17, 27 (emphasis added).  Together, these provisions explain what disputes must be settled under the Plan and which parties are subject to the Plan's arbitral decisions.

When Gemma refused to reassign the work to the Plumbers after informal demands, the Plumbers instituted an arbitration action against Gemma under the Plan.  Pet. ¶ 27.  Two arbitral decisions resulted.  In the first, the arbitrator concluded that the Plan conferred no authority to grant the disputed work to the Plumbers because Gemma never executed any agreement with the Plumbers.  ECF No. 11-3 at 38.  The Plumbers complained to the Plan that the first arbitrator did not issue their decision within the time required by the plan, and the Plan vacated the award and appointed a new arbitrator.  ECF No. 11-3 at 4.

In the second decision, at issue here, the arbitrator agreed that Gemma had never executed any agreement with the Plumbers.  ECF No. 3-2 at 4.  Nevertheless, the arbitrator concluded that "Gemma was bound to resolve jurisdictional disputes through the Plan" under the applicable JCUs.  *Id.*  The arbitrator found this obligation in the first part of the "JURISDICTIONAL DISPUTES" addendum:

4

> All jurisdictional disputes between or among the [Boilermakers and the Iron Workers] and other unions who have signed agreements with [Gemma] or any subcontractor governing the performance of work [assigned in the JCUs], and who have agreed to be bound to the procedures provided in [the Plan] shall be settled and adjusted according to [the Plan]. The assignments of [Gemma] or a subcontractor (where applicable) shall be followed until the dispute is resolved in accordance with the Plan.

*Id.* at 3-4 (quoting ECF No. 11-3 at 11, 21). It appears that the arbitrator read this provision to mandate that Gemma be bound by any arbitral award as between any union (1) stipulated to the Plan and (2) assigned work from Gemma or a Gemma contractor. *See id.* at 6. After applying the substantive provisions of the Plan, the arbitrator then ordered Gemma to reassign all work under the JCUs to the Plumbers, notwithstanding the lack of any agreement between Gemma and the Plumbers. *Id.* at 8.

Gemma refused to comply with the arbitral award and continued to assign work to the Boilermakers, Iron Workers, and non-union employees. Pet'r's Mot. at 3. The Plumbers then filed the instant petition to enforce the arbitral award, and the parties have completed cross-briefing on dispositive motions. Before turning to the merits of these motions, however, the Court ordered supplemental briefing on whether the Court had jurisdiction over an arbitral award governing a Delaware union, a Connecticut Company, and work performed in Ohio. *See* Order, ECF No. 23 at 1-2. In receipt of that supplemental briefing, the Court turns to the cross-motions' resolution.

## II.     LEGAL STANDARD

"[W]hen parties to a collective bargaining agreement have agreed to submit to arbitration, the function of the court is extremely limited." *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 254 F. Supp. 2d 12, 14 (D.D.C. 2003). It is not the reviewing court's role to "weigh[] the merits of the grievance, consider[] whether there is equity in a particular claim, or determin[e] whether there is particular language in the written instrument." *United Steelworkers*

5

*of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960).  Whether the parties agreed to arbitrate in the first place, however, is a question for the Court, and the Court extends no deference to the arbitrator's view.  *KenAmerican Resources Inc. v. Int'l Union, United Mine Workers of Am.*, 99 F.3d 1161, 1163 (D.C. Cir. 1996).  As such, motions to set aside arbitral awards for lack of jurisdiction, or for lack of any agreement to arbitrate, are reviewed pursuant to Federal Rule of Civil Procedure 56.  *See Nat'l Postal Mail Handlers Union v. U.S. Postal Serv.*, 67 F. Supp. 3d 236 (D.D.C. 2014); *Stromberg Sheet Metal Works, Inc. v. Wash. Gas Energy Sys., Inc.*, 448 F. Supp. 2d 64, 68 (D.D.C. 2006).

## IV. DISCUSSION

### A. Jurisdiction

The Court turns first to whether it has subject matter jurisdiction over this dispute. Petitioner relies on the 29 U.S.C. § 185 and 28 U.S.C. § 1331.  As the Court noted in in its [23] Order, section 185(c), entitled "Jurisdiction," provides that a court "shall be deemed to have jurisdiction of a labor organization . . . in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members."  Per subsection (a), entitled "Venue, amount, and citizenship," "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having *jurisdiction* of the parties[.]"  (emphasis added). Taken together, the Court tentatively construed section 185 to confer subject matter jurisdiction only over "[s]uits for violations of [labor] contracts" where the union in action is "engaged in representing or acting for employee members" within the federal district hearing the action.  ECF No. 23 at 2.

Petitioner argues that subsection (c), "Jurisdiction," is in fact a venue provision, relying on dicta from sexagenarian Supreme Court dicta in *Denver v. Rio Grande W. R.R. Co. v. Bhd. of*

*R.R. Trainmen*, 387 U.S. 556, 562 (1967), in which the Court briefly characterized it as such. ECF No. 25 at 8. Although the Court has issues with the scope of Petitioner's view on jurisdiction, the Court need not resolve the question as Petitioner has demonstrated that it does maintain sufficient activities in the District of Columbia for the Court to exercise jurisdiction over this action. ECF No. 25-1 at 2-3.

### B.  Merits

"Courts interpret collective bargaining agreements according to the general rules of contract law." *Holland v. Freeman United Coal Mining Co.*, 574 F. Supp. 2d 116, 129 (D.D.C. 2008) (quoting *Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning*, 934 F.2d 35, 40-41 (3d Cir. 1991) (Alito, J.)). It is, of course, "the broad policy of the law to afford contracting parties the utmost freedom to bind themselves as they see fit." Williston on Contracts § 30:9 (4th ed. 2022) (footnote omitted). When interpreting a contract, "the judicial task . . . is to give effect to the mutual intent of the parties," and "when the language of a contract is clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the intentions of the parties." *Mesa Air Grp., Inc. v. Dep't of Transp.*, 87 F.3d 498, 503 (D.C. Cir. 1996). Faced with an unambiguous contract, the Court may not "add words to a contract [or] change the parties' bargain." *See Wharf, Inc. v. D.C. Wharf Horizontal Reit Leaseholder LLC*, 2021 WL 119843, at *29 (D.D.C. Mar. 30, 2021) (CKK) (applying District of Columbia law). At the same time, the Court must read the contract "as a whole" and "give effect to all its provisions." *KiSKA Const. Corp. v. Wash. Metro. Area Transit Auth.*, 321 F.3d 1151, 1164 (D.C. Cir. 2003).

Because the parties agree that the only agreements in which Gemma could have stipulated to arbitration under the Plan are the two JCUs, the Court focuses its analysis on those

two substantively identical contracts. As a threshold matter, any agreement by Gemma to arbitrate any and all disputes arising from the Guernsey work "must be particularly clear." *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 79 (1998); *see also Skrynnikov v. Fed. Nat'l Mortg. Assoc.*, 943 F. Supp. 2d 172, 177 (D.D.C. 2013) ("collective bargaining agreements to arbitrate . . . must be clear and unmistakable" (cleaned up)). The arbitration clause in the JCUs is clear and unmistakable: "[a]ll disputes over the meaning of, and the rights and obligations contained in this Agreement," are subject to "arbitration" as between "[t]he Parties," i.e., Gemma, the Iron Workers, and the Boilermakers. ECF No. 11-1 at 14-15, 25-56. As the Plumbers are not a party to either JCU, this clause does not apply to them, and thereby does not obligate Gemma to arbitrate with the Plumbers.

The "JURISDICTIONAL DISPUTES" addendum is also unambiguous. It imposes obligations and liabilities upon the Iron Workers and the Boilermakers, but none upon Gemma. First, the addendum states that "[a]ll jurisdictional disputes between or among the [*Iron Workers or the Boilermakers*] *and other* [*subcontracting*] *unions* . . . shall be settled and adjusted according to . . . the Plan." ECF 11-1 at 17, 27. This first provision does not include Gemma. Second, the addendum provides that arbitral decisions under the Plan are "final and binding and conclusive on the [*Iron Workers, Boilermakers*] *or other affected unions*." *Id.* This second provision again does not include Gemma in any arbitration requirement. Third, underlining the point that Gemma refused to itself be bound by any arbitral award as to jurisdictional disputes under the Plan, the addendum provides that Gemma "retains the sole right to control and assign the jurisdictional duties for all work." *Id.* To find in this addendum an agreement by Gemma to arbitrate with any subcontracting union (here, the Plumbers), Petitioner would have the Court delete this third clause and add "Gemma" to the first two clauses. Yet, confronting an

8

unambiguous contract, the Court may not add terms to a contract that are not there nor delete terms that are there. *See Wharf, Inc.*, 2021 WL 119843, at *29.

Even if the Court were to add and subtract in the addendum, doing so would nullify the arbitration clause to which Gemma *is* bound in the JCUs. Gemma agreed to arbitrate all disputes over "the meaning of, and the rights and obligations" in the JCUs, but only with the Iron Workers and the Boilermakers, and not under the Plan. To apply Petitioner's reading of the addendum would be either to erase this earlier arbitration provision or to ignore it altogether. This the Court may not do. *KiSKA*, 321 F.3d at 1164.

Taken together, the addendum's meaning is unambiguous, even if inartfully drafted. The addendum recognizes that there may be jurisdictional disputes among the various unions in the construction trade as to the Guernsey work, and that jurisdictional disputes among these unions are generally resolved under the Plan. It further recognizes that a construction union's contractual obligations under the Plan *as to other unions* may disqualify that union from work that it is contractually bound—under the JCU—to perform. As to the rights between Gemma and a union, however, the JCUs mean what they say: Gemma "retains the sole right to control and assign the jurisdictional duties for all work" regardless of the outcome of inter-union arbitration. The Plumbers may well have a remedy for misassigned work under the Plan, but not as against Gemma in arbitration.

### C. Attorney's Fees

Lastly, Gemma asks the Court to enter an order "award[ing] Gemma its attorneys' fees and costs." Resp't's Mot. at 23. Because Gemma cites no authority explaining why the Court may grant attorney's fees in this case, the Court holds this portion of Gemma's [11] Motion to Dismiss the Petition in abeyance and will order supplemental briefing on the subject.

## V. CONCLUSION

Gemma offered the Plumbers the disputed work once before. The Plumbers rejected the offer. The JCUs, which the Plumbers refused to sign, provide the Plumbers no right to force Gemma back to the bargaining table either for better terms or simply to obtain work they already refused. In sum, and for the foregoing reasons, the Court **GRANTS IN PART AND HOLDS IN ABEYANCE IN PART** Respondent's [11] Motion to Dismiss the Petition to address Respondent's request for attorney's fees and costs, **DENIES** Petitioner's [16] Cross-Motion for Summary Judgment, and **VACATES** the arbitral Decision and Award of Robert M. Hirsch of the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry. An appropriate order accompanies this Memorandum Opinion.

**Date**:  July 15, 2022

　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　　　　United States District Judge